UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| **KALVIN GARNER** | \* | **CIVIL ACTION NO.   09-0670** |
| **VERSUS** | \* | **JUDGE ROBERT G. JAMES** |
| **RICHLAND PARISH DETENTION CENTER, ET AL.** | \* | **MAG. JUDGE KAREN L. HAYES** |

REPORT AND RECOMMENDATION

Before the court are cross-motions for summary judgment filed by plaintiff Kalvin Garner [doc. # 29], and remaining defendant, Lt. Hamm [doc. # 38].  The motions have been referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  For reasons stated below, it is recommended that the cross-motions for summary judgment be DENIED, and that the court set an evidentiary hearing to resolve whether plaintiff exhausted his administrative remedies prior to filing suit.

Background

From January 15, 2008, until January 20, 2009, Kalvin Garner was incarcerated at the Richland Parish Detention Center ("RPDC") while serving a sentence administered by the Louisiana Department of Corrections.  *See* Complaint, pg. 4 [doc. # 1]; Pl. MSJ [doc. # 29].[1] Garner alleges that on, or about November 30, 2008, as he was passing through "double-swinging metal doors" on his way to pill call, an RPDC guard, Lt. Hamm, forcefully and intentionally kicked the doors into Garner, fracturing Garner's left wrist and opening up a gash

---

[1] *But see* Booking Report, Def. Opp. Memo., Exh. [doc. # 34] (indicating that the charges against Garner were still "open").

over his right eye. *Id*. In the aftermath of the incident, Garner alleges that Lt. Hamm schemed with the RPDC medical department and administration to prevent his prompt transfer to the hospital for necessary medical treatment. *Id*.

Accordingly, on April 21, 2009, Garner filed the instant civil rights complaint under 42 U.S.C. § 1983 against the RPDC, Warden A. Cupp, Lt. Hamm, and "C. McDonald." (Complaint).[2] His complaint essentially set forth claims against Lt. Hamm for excessive force and inadequate medical care, and initially requested monetary damages totaling $32,500. *Id*. On May 19, 2009, plaintiff amended his complaint to further refine and amplify his allegations to include severe arm and facial injuries, and a $1.5 million demand for compensatory and punitive damages. [doc. # 4]. He also joined as a defendant, RPDC's "unnamed insurance company." *Id*. In an August 11, 2009, "Motion for Judgment on the Pleadings," plaintiff requested service upon defendants, Hamm, Cupp, and the unnamed insurance company. [doc. # 9]. On September 19, 2009, plaintiff filed a second "Motion for Judgment on the Pleadings," but, this time, requested service solely on defendant, Lt. Hamm. [doc. # 10].

Acceding to plaintiff's latest expression of intent, the court ordered service solely upon Lt. Hamm, and thereby implicitly struck plaintiff's claims against the other defendants. (Sept. 21, 2009, Mem. Order [doc. # 11]). In November 2009, Lt. Hamm answered the complaint and amended complaint(s). [doc. #s 17-18]. The parties then exchanged discovery which eventually culminated in the instant cross-motions for summary judgment.[3] Plaintiff filed his motion for summary judgment on February 19, 2010, apparently seeking judgment on the issue of liability.

---

[2] "C. McDonald" was named solely on the civil cover sheet.

[3] On February 8, 2010, plaintiff filed a "Motion for Contempt of Court and or Motion to Enforce/Motion to Compel." [doc. # 25]. The motion is currently pending, but is addressed via separate order.

[doc. # 29]. On March 5, 2010, defendant, Hamm, filed his opposition to plaintiff's motion for summary judgment, and urged his own cross-motion for summary judgment on the twin grounds that, 1) Garner did not suffer inadequate and/or delayed medical care, and 2) because Garner failed to exhaust his available administrative remedies before filing suit. [doc. # 38]. Following delays for additional briefing, the matter is now before the court.

## Summary Judgment Principles

Summary judgment is appropriate when the evidence before the Court shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed R. Civ. P. 56(b). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2511 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id*.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharmaceuticals Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Id*.

In evaluating the evidence tendered by the parties, the court must accept the evidence of the non-movant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). There can be no genuine issue as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322-23. This is true "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 323.

When a movant bears the burden of proof on an issue, it must establish "beyond peradventure[4] all of the essential elements of the claim . . . to warrant judgment in [its] favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). In other words, the movant must affirmatively establish its right to prevail as a matter of law. *Universal Sav. Ass'n v. McConnell*, 1993 WL 560271 (5th Cir. Dec. 29, 1993) (unpubl.).

## Analysis

In support of his cross-motion for summary judgment, Hamm contends that plaintiff failed to exhaust available administrative remedies.[5] The Fifth Circuit recently addressed the procedure that courts should employ in this context:

> [w]hen the defendant raises exhaustion as an affirmative defense, the judge should usually resolve disputes concerning exhaustion prior to allowing the case to proceed to the merits. If the plaintiff survives summary judgment on exhaustion,

---

[4] I.e., beyond doubt.

[5] Hamm preserved the exhaustion defense in his answer(s). *See* doc. #s 17 & 18.

>   the judge may resolve disputed facts concerning exhaustion, holding an evidentiary hearing if necessary. Then, if the judge determines that the plaintiff has exhausted administrative remedies or that his or her failure to exhaust should be excused, the case may proceed to the merits.

*Dillon v. Rogers*, 596 F.3d 260, 270-273 (5th Cir. 2010). (footnote omitted).[6]

Accordingly, the court initially will consider defendant's exhaustion defense.

I.      **Exhaustion Principles**

Pursuant to 42 U.S.C. § 1997e, as amended by the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory, and is required even where the relief sought cannot be granted by the administrative process. *Woodford v. Ngo*, 548 U.S. 81, 85, 126 S.Ct. 2378, 2382-83 (2006) (citations omitted). All "available" remedies must be exhausted, whether speedy and effective, or not. *Porter v. Nussle*, 534 U.S. 516, 524, 122 S.Ct. 983, 988 (2002). "Proper exhaustion requires that the prisoner not only pursue all available avenues of relief but also comply with all administrative deadlines and procedural rules." *Johnson v. Kukua*, 342 Fed. Appx. 933, 934 (5th Cir. Aug. 20, 2009) (unpubl.) (citing *Woodford v. Ngo*, 548 U.S. at 89-93, 126 S.Ct. 2378)). An untimely or otherwise procedurally defective administrative grievance does not satisfy the exhaustion requirement. *Id*. Furthermore, "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes,

---

[6] The Fifth Circuit reaffirmed that the exhaustion affirmative defense may be addressed in the context of a motion for summary judgment where the non-moving party enjoys the protections of Federal Rule of Civil Procedure 56. *Id*.

and whether they allege excessive force or some other wrong." *Porter, supra* (citation omitted).[7] Exhaustion also applies to claims brought against defendants in their official and/or individual capacities. *See e.g., Williams v. Henagan*, 595 F.3d 610, 618 (5th Cir. 2010); *Hines v. Texas*, 76 Fed. Appx. 564 (5th Cir. Sept. 29, 2003) (unpubl.).

Under Louisiana law, the Department of Public Safety and Corrections and each sheriff is authorized to adopt an administrative remedy procedure at each of their institutions. La. R.S. 15:1171. The administrative remedy procedure is intended to resolve complaints and grievances that arise while the offender is in the custody of, or under the supervision of the department or sheriff. *Id*. The procedure encompasses complaints and grievances for monetary, injunctive, declaratory, or other relief stemming *inter alia* from conditions of confinement, personal injuries, and medical malpractice. *Id*. These administrative procedures, when promulgated, provide the offender's exclusive remedy – to the extent that federal law permits. *Id*. Finally, "status as an 'offender' is determined as of the time the basis for a complaint or grievance arises. Subsequent events, including posttrial judicial action or release from custody, shall not affect status as an 'offender' . . ." La. R.S. 15:1171(D).

## II.     Discussion

In his Statement of Uncontested Material Facts, Hamm alleges that the RPDC had a prison grievance procedure in effect as of November 30, 2008, that plaintiff knew about, but nonetheless failed to exhaust in connection with the circumstances that formed the basis for the instant lawsuit. (Def. Statement of Uncontest. Mat. Facts, Nos. 5-7 [doc. # 38]). In support of his argument, Hamm relies upon plaintiff's original complaint which acknowledges that the

---

[7] A claim for deliberate indifference to an inmate's serious medical needs is also subject to exhaustion. *Harris v. Hegmann*, 198 F.3d 153, 158 (5th Cir. 1999).

RPDC had a grievance procedure in effect that plaintiff failed to invoke. (Compl., pg. 3; Def. Exh. A).[8] Hamm also adduced a statement dated January 15, 2008, purportedly signed by Garner, in which Garner acknowledged that he had received a copy of the RPDC's grievance procedure. (Def. MSJ, Exh. B [doc. # 38]). Attached to Garner's statement is what appears to be the grievance procedure itself, together with an "Inmate Grievance" form, a "Response to Grievance" form; a "Warden's Review Decision" form; and a "Sheriff's Review Decision" form. *Id*. These documents, in toto, suggest that the RPDC employs a three-level grievance procedure, and that an inmate must initiate the process by sending a grievance to the warden within 30 days of the date of the incident. *Id*.

In response to Hamm's cross-motion for summary judgment, plaintiff neither contests that the RPDC had a grievance procedure in effect, nor disputes that he failed to file a grievance *while incarcerated at the RPDC*. *See* Pl. Reply [doc. # 35]. Instead, plaintiff states that he initially did not avail himself of the administrative process because Lt. Hamm purportedly told him and another inmate that if they filed a complaint against him, Hamm would "kill" both of them. *Id*. Given this threat, plaintiff understandably bided his time, and allegedly submitted an administrative remedy in January 2009, following his transfer to a new facility. *Id*.

As the Fifth Circuit recently emphasized, "[i]f impediments to filing grievances render remedies unavailable at one facility, remedies may become available again once a prisoner has been transferred, unless there are other problems at the new facility." *Dillon*, 596 F.3d at 267-268 (citing *Bryant v. Rich*, 530 F.3d 1368, 1379 (11th Cir.2008)). Stated another way, the grievance filing period is tolled only so long as the inmate is actually impeded from invoking and

---

[8] Plaintiff explained that he did not file a grievance because Hamm had threatened to place him in indefinite lockdown in freezing temperatures, without clothes. *Id*.; *see* discussion, *infra*.

exhausting the process. Furthermore, Hamm is not estopped from raising the exhaustion defense because his alleged threats did not prevent Garner from submitting a grievance once Garner transferred to a new facility. *See Dillon, supra*.

According to Garner, he mailed his grievance to the RPDC in January 2009, but never received a response. *Id*. at pg. 2; *see also* Exhs. 19A-B. Plaintiff supports this statement with a document marked Exhibit 19-A, entitled "1st Step A.R.P., Administrative Remedy Procedure, Complaint," which recounts the November 30, 2008, incident at the RPDC. (Pl. Resp., Exh. 19-A). This "Complaint" is signed by Garner and dated January 23, 2009; it further indicates that Garner was transferred to a new facility on January 20, 2009. *Id*. Plaintiff also produced a document marked Exhibit 19-B which is a copy of an envelope that is addressed to the Louisiana Department of Corrections in Baton Rouge, and bears the stamp, "Return for Postage." (Pl. Resp., Exh. B). If, as plaintiff intimates, he used the envelope (Exh. 19-B) to mail the "Complaint" (Exh. 19-A) to the RPDC, the envelope itself may explain why he never received a response from the RPDC – i.e., 1) the envelope was incorrectly addressed, and 2) it was returned for lack of postage. *Id*.

The court further observes that the return address on the envelope bears Garner's address at the RPDC, which by-then, should have been his former address. *Id*. While Garner's use of the RPDC as his return address conceivably could be attributed to oversight, another document of record entitled "Administrative Remedy Procedure, Second Step Process" (hereinafter, "ARP"), suggests that the envelope was placed in the mail *while Garner was still at the RPDC*. *See* M/Amend. Compl. [doc. # 4]. Indeed, the ARP is dated in early December 2008, and complains about the November 30, 2008, incident. *Id*. It also contains instructions to send the form to the very same addressee and address found on the envelope that plaintiff is now attempting to

8

associate with the grievance that he purportedly sent in January 2009. In other words, despite plaintiff's representations to the contrary, the record suggests that he filled out a grievance form while still at the RPDC and unsuccessfully attempted to send it to the Louisiana Department of Corrections.[9]

Nevertheless, as the record now stands, the undersigned is compelled to find that defendant has not established "beyond all peradventure" that plaintiff failed to exhaust available administrative remedies. Although Hamm states that plaintiff did not file a grievance regarding the facts at issue here, he has not adduced any evidence affirmatively establishing that the RPDC did not receive a pertinent grievance from plaintiff. *See Burnette v. Bureau of Prisons*, 2009 WL 1650072, *3 (W.D. La. June 10, 2009) (exhaustion defense not established by unsupported allegations). Furthermore, in response to defendant's motion, plaintiff has adduced a "complaint" that he purportedly sent to the RPDC, within days of his transfer to a different facility. In addition, while the grievance forms submitted by Hamm suggest that the RPDC had a three-step grievance policy, the forms are not authenticated, nor is the policy otherwise confirmed and explained by any competent witness. *See Rebaldo v. Jenkins*, 660 F. Supp.2d 755, 762-763 (E.D. La. 2009) (defendants denied summary judgment on exhaustion where, among other reasons, they failed to provide any declaration or affidavit to establish that they never received a relevant grievance).

When, as here, the exhaustion defense is clouded by ambiguous or disputed facts, the district court is compelled to resolve this threshold issue typically before entertaining the merits

---

[9] In his supplemental opposition to plaintiff's motion to compel, defendant argues that the RPDC did not receive this ARP until plaintiff filed his amended complaint in this suit. (Def. Opp. Memo., pg. 3 [doc. # 34]). Statements by counsel, however, do not constitute evidence. *Skyline Corp. v. N.L.R.B.*, 613 F.2d 1328, 1337 (5th Cir. 1980).

of the complaint.  *Dillon, supra*.  In so doing, the court may hold an evidentiary hearing, if necessary.  *Id*.  Because of the contradictions in plaintiff's own version of events and defendant's failure to adduce requisite evidence to support his exhaustion defense, it appears that an evidentiary hearing is required.  If the court ultimately resolves the exhaustion issue in favor of plaintiff, then the parties may re-urge their motions for summary judgment on the merits.

For the above-assigned reasons,

**IT IS RECOMMENDED** that the motion for summary judgment [doc. # 29] filed by plaintiff Kalvin Garner be **DENIED**, at this time.

**IT IS FURTHER RECOMMENDED** that the cross-motion for summary judgment [doc. # 38] filed by defendant, Lt. Hamm, be **DENIED**, at this time.

**IT IS FURTHER RECOMMENDED** that the matter be referred for an evidentiary hearing on the issue of exhaustion.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.C.P. Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR,**

**FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 20th day of April 2010.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE