UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

**KALVIN GARNER**                   *        **CIVIL ACTION NO.   09-0670**

**VERSUS**                           *        **JUDGE ROBERT G. JAMES**

**RICHLAND PARISH DETENTION**     *        **MAG. JUDGE KAREN L. HAYES**
**CENTER, ET AL.**

### REPORT AND RECOMMENDATION

Before the undersigned magistrate judge, on reference from the district court, is the threshold issue of exhaustion of administrative remedies. For reasons set forth below, it is recommended that plaintiff's claims against defendant, Lt. Hamm, be **DISMISSED, without prejudice**, on the merits, but **DISMISSED with prejudice** for purposes of proceeding in forma pauperis pursuant to 28 U.S.C. § 1915(d).

### Relevant Background Facts[1]

From January 15, 2008, until January 20, 2009, Kalvin Garner was housed at the Richland Parish Detention Center ("RPDC") while serving a sentence administered by the Louisiana Department of Corrections. *See* Complaint, pg. 4 [doc. # 1]; Pl. MSJ [doc. # 29]. Garner alleges that on or about November 30, 2008, as he was passing through "double-swinging metal doors" on his way to pill call, RPDC guard, Lt. Hamm, forcefully and intentionally kicked the doors into Garner, fracturing Garner's left wrist and opening up a gash over his right eye. *Id*. In the aftermath of the incident, Garner alleges that Lt. Hamm schemed with the RPDC medical

---

[1] Much of this background summary is borrowed from the undersigned's April 20, 2010, Report and Recommendation [doc. # 44].

department and administration to prevent his prompt transfer to the hospital for necessary medical treatment. *Id*.

Accordingly, on April 21, 2009, Garner filed the instant civil rights complaint under 42 U.S.C. § 1983 against Lt. Hamm,[2] asserting claims for excessive force and inadequate medical care, and seeking $ 1.5 million in compensatory and punitive damages. *See* Complaint, as amended [doc. #s 1 & 4]. Following discovery, the parties exchanged cross-motions for summary judgment. One of the issues raised by Hamm's motion for summary judgment was Garner's alleged failure to exhaust available administrative remedies before filing suit. [doc. # 38].

On April 20, 2010, the undersigned determined that the court should resolve the threshold issue of administrative exhaustion before reaching the merits of the complaint. (Apr. 20, 2010, R&R [doc. # 44]). However, because of contradictions in plaintiff's version of events and defendant's failure to adduce requisite evidence to support the exhaustion defense, the undersigned recommended that an evidentiary hearing be held. *Id*. Thus, on July 15, 2010, the district court denied the cross-motions for summary judgment, and referred the matter to the undersigned magistrate judge to hold an evidentiary hearing on the issue of exhaustion and to issue recommended findings to the court. (July 15, 2010, Judgment [doc. # 48]).

The undersigned held an evidentiary hearing on the issue of exhaustion on September 14, 2010. On September 28, 2010, the parties filed post-hearing memoranda. The matter is now before the court.

---

[2] Plaintiff originally sued additional defendants, but those claims effectively were withdrawn and/or stricken. *See* Sept. 19, 2009, "Motion for Judgment on the Pleadings" [doc. # 10] and Sept. 21, 2009, Mem. Order [doc. # 11].

**Pleadings, Evidence, and Testimony**

I.      **Plaintiff's Pre-Hearing Filings and Allegations**

In plaintiff's original complaint, he acknowledged (by checked box) that the RPDC had a prison grievance procedure. (Compl., pg. 2).[3] He also conceded that he failed to file an administrative grievance stemming from the facts that gave rise to this lawsuit. (Compl., pg. 2). He explained, however, that he did not file a grievance out of fear that Lt. Hamm would retaliate against him by placing him in indefinite lockdown in freezing temperatures. *Id*. The complaint is dated December 1, 2008, i.e., the day after the incident. *Id*., pg. 5.

On May 19, 2009,[4] Garner attached to his amended complaint a form entitled "Administrative Remedy Procedure, Second Step Process." (M/Amend. Compl. [doc. # 4]) (hereinafter referred to as "Exhibit A").[5] The document is dated December 7, 2008, and complains about the November 30, 2008, incident. *Id*. Instructions on the form state that once completed, it should be forwarded to the Louisiana Department of Corrections in Baton Rouge, Louisiana. *Id*. Until the evidentiary hearing, plaintiff did not discuss or refer to this form.

In his reply to defendant's motion for summary judgment, Garner reiterated that he did not file an "Arp/grievance" while he was at the RPDC because he feared retaliation and feared for his life. (Pl. Reply [doc. # 35]). He explained that he tried to exhaust his administrative remedies by mailing a grievance to the RPDC after he was transferred to Forcht Wade Correctional Center in January 2009. *Id*. However, he never received a response. *Id*. To

---

[3] At the time that plaintiff filed the instant suit, he was incarcerated at the Forcht Wade Correctional Center. *See* Compl., Envelope.

[4] By this time, plaintiff had transferred to Winn Correctional Center.

[5] At the September 14, 2010, evidentiary hearing, defendant submitted this document into evidence as Exhibit A.

support his version of events, Garner adduced a document marked Exhibit 19-A, entitled "1st Step A.R.P., Administrative Remedy Procedure, Complaint," which recounts the November 30, 2008, incident at the RPDC. (Pl. Resp., Exh. 19-A) (hereinafter referred to as "Exhibit B").[6] This "Complaint" is signed by Garner and is dated January 23, 2009. *Id*. Plaintiff also produced a copy of an envelope that is addressed to the Louisiana Department of Corrections in Baton Rouge, and stamped "Return for Postage" and "INDIGENT." (Pl. Resp., Exh. B).

## II.     Plaintiff's Hearing Testimony

Before his transfer to the RPDC, Garner was housed at the Livingston Parish Jail. He previously had filed a grievance on a different matter. He was thus aware of the grievance process in other prisons. Inmate counsel at the RPDC assisted Garner with another matter involving Garner's wrist. Garner had a sixth grade education.

On the night of the incident, Lt. Hamm allegedly threatened to kill Garner if he filed a grievance or complained about his wrist. Despite this threat, Garner complained about his wrist and endeavored to obtain treatment.

Peter Alfred, an inmate at the Winn Correctional Center ("Winn") helped Garner complete Exhibit B. Garner agreed that Exhibit B was completed at Winn. Later in the hearing, in response to a leading question by his attorney, Garner stated that Exhibit B was completed while he was at Forcht-Wade Correctional Center. Garner does not know why he decided to complete and submit Exhibit B after he purportedly had submitted two prior grievances to the warden while at the RPDC. *See* discussion, *infra*.

Garner testified that, while at the RPDC and about one week after the incident, he

---

[6] At the September 14, 2010, evidentiary hearing, defendant submitted this document into evidence as Exhibit B.

completed a grievance form and slipped it under Warden Cupp's door.

Garner obtained copies of the form entitled "Administrative Remedy Procedure Second Step Process," filed herein as Exhibit A, from an inmate at the RPDC. The inmate had recently transferred to the RPDC from another facility. The inmate told Garner that he had the necessary forms, and helped Garner to complete one. Garner slipped one copy of Exhibit A under the warden's door. He placed another copy of Exhibit A in the prison mail system, addressed to the Louisiana Department of Corrections in Baton Rouge. Garner used an "indigent" envelope provided by the RPDC. Exhibit A, however, was returned to Garner, with the envelope opened and marked "Return for Postage." *See* Envelope, Hearing Exh. B, pg. 2.[7]

Garner placed a total of two grievances under the warden's door. He slipped the second grievance under the warden's door approximately five to six days after the first one. He did not retain a copy of the first grievance. He never received a response to either grievance.

Garner told Peter Alfred to tick the box on his civil rights complaint to indicate that he had not submitted a grievance. Garner said that he so instructed Alfred because he had forgotten that he previously had submitted the two grievances to the warden. Garner attributed his memory lapse to having too much going on at the time. Garner later recalled a conversation that he had with Warden Cupp during which Cupp acknowledged that he had received Garner's grievances. Approximately two days after this conversation with Warden Cupp, Garner was transferred out of the RPDC.

Garner admitted that Lt. Hamm never placed him in lockdown in freezing temperatures. Garner added, however, that one time when he was alone with another inmate in the kitchen,

---

[7] When an RPDC inmate submits an "indigent" envelope for mailing, the facility is supposed to affix the proper postage.

Hamm came in and told the other inmate to leave. Hamm stood by the door and stared sinisterly at Garner. Garner became apprehensive; so he quickly finished and left, without incident.

Peter Alfred helped Garner prepare the instant lawsuit. However, Garner completed certain sections of the complaint at the RPDC.

Garner believed that Lt. Hamm was the warden's nephew. He also believed that Hamm was related to the Richland Parish Sheriff.

Garner remembered signing Exhibit D in January 2008 when he arrived at the RPDC.[8] Garner does not recall fully understanding what the document meant. When he arrived at the facility, Exhibit D was placed in front of him, and he was told to sign it.

Garner tried to file a "complaint" while at the RPDC, at Forcht-Wade, and at Winn.

### III.    Hearing Testimony and Evidence Regarding the RPDC's Grievance Procedures

Assistant Warden Ricky Lee Scott testified that the RPDC had an administrative remedy procedure in effect on November 30, 2008. Scott testified that when an inmate experienced a problem all he had to do was go to the control center and ask for an ARP form, fill it out, and place it in the mailbox. The completed form is then forwarded to the warden for his consideration. If the complaint is subject to the grievance procedures, the warden will forward the grievance to a captain or to the assistant warden.

Hearing Exhibit E, entitled "3-015 Grievance Procedure" is taken from the RPDC policy manual and represents the grievance procedure in effect at the RPDC during the relevant period.[9]

---

[8] Exhibit D is a form which states "I have received a copy of the grievance procedure process, and medical rules upon my arrival at Richland Parish Detention Center." (Hearing Exh. D). It bears Garner's signature, and is dated January 15, 2008. *Id*. It is also signed by an unknown corrections officer. *Id*.

[9] Exhibit E provides, in pertinent part,
POLICY: It is the policy of the Richland Parish Sheriffs Office that inmates in its

According to Scott, Garner should have been provided with a copy of the RPDC grievance procedure upon his arrival at the facility. The intake officer is supposed to explain the rules to the inmate. The RPDC also maintains inmate counsel who is supposed to explain things to the inmates.

Scott identified several grievance forms used at the RPDC, entitled "Inmate Grievance," "Response to Grievance," "Warden Review Decision," and "Sheriff's Review Decision." (Hearing Exhibits F, G, H, and I, respectively).

An inmate is given Exhibit F when he indicates that he wants to file a grievance. Exhibit F specifies that it must be sent to the Warden within 30 days of the precipitating incident.[10] The "First Respondent" uses Exhibit G to respond to the grievance within 15 days. If the inmate wishes to appeal his grievance, he must submit a Request for Warden's Review within five days after receipt of the response to his grievance. (Hearing Exh. G). Scott testified that the warden

---

        custody will have and [sic] avenue of redress of grievances that is formal, written and directed at a resolution of the grievance, if it is legitimate.

        TO WHOM THIS POLICY APPLIES: All Employees and All Inmates

        PROCEDURE: Inmates are encouraged to resolve their grievances in an informal way, and only [sic] the grievance procedure for matters that can not be resolved to his or her satisfaction in that manner. A letter to the warden stating his allegation and containing the phrase "This is a request for grievance remedy" may initiate the grievance procedure.

        Upon receipt of a letter requesting grievance remedy the matter will be referred to the shift supervisor upon which shift it originates from, or other appropriate employee. The employee will determine that [sic] cause of the problem take appropriate action to remedy any grievance that is legitimate, and make a written response to that inmate. This will be done within 10 calendar days.

(Hearing Exh. E) (in pertinent part).

    [10] The grievance form explains that if the complainant does not receive a response within 20 days, he may submit a request for warden's review.

will respond to the request for review within 15 days. If the inmate remains dissatisfied with the warden's response to his request for review, the inmate may request review by the sheriff. He must submit the request for Sheriff's review within five days after receipt of the warden's response. The Sheriff then will issue his decision within 40 days after receipt of the request, "or if less, within 90 days after [the inmate] filed [the] Grievance." (Hearing Exh. H).[11]

Scott testified that once an inmate generates a grievance form and allows the RPDC to look into his complaint, he has a right to file suit if he is unhappy with any response. Scott agreed that an inmate can submit a grievance on any piece of paper, as long as it states that it is a "request for remedy for administrative procedure." Exhibit A is not a form used by the RPDC. Scott never saw Exhibits A and B before this suit was filed.

The RPDC has a lockbox (with a slot) on the main hallway for inmates to submit their grievances.

Scott did not recall receiving a grievance from Garner regarding the November 30, 2008, incident. Garner never complained to Scott about any alleged threats made to him by Hamm. Upon cross-examination, however, Scott conceded that he did not know whether Garner ever slipped a complaint under his door. Nonetheless, if Garner had submitted a complaint, Scott would have looked into it.

Scott had heard the rumor that Hamm was related to the warden. However, Lt. Hamm testified that he was not related to the warden or to the sheriff.

---

[11] Scott testified, however, that the Sheriff had 15 days to respond. He added that the total grievance process takes between 45 to 50 days.

**Analysis**

**I.     Exhaustion Principles**

Pursuant to 42 U.S.C. § 1997e, as amended by the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory, and is required even where the relief sought cannot be granted by the administrative process. *Woodford v. Ngo*, 548 U.S. 81, 85, 126 S.Ct. 2378, 2382-83 (2006) (citations omitted). All "available" remedies must be exhausted, whether speedy and effective, or not. *Porter v. Nussle*, 534 U.S. 516, 524, 122 S.Ct. 983, 988 (2002). "Proper exhaustion requires that the prisoner not only pursue all available avenues of relief but also comply with all administrative deadlines and procedural rules." *Johnson v. Kukua*, 342 Fed. Appx. 933, 934 (5th Cir. Aug. 20, 2009) (unpubl.) (citing *Woodford v. Ngo*, 548 U.S. at 89-93, 126 S.Ct. 2378)). An untimely or otherwise procedurally defective administrative grievance does not satisfy the exhaustion requirement. *Id*. Furthermore, "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter, supra* (citation omitted). A claim for deliberate indifference to an inmate's serious medical needs is also subject to exhaustion. *Harris v. Hegmann*, 198 F.3d 153, 158 (5th Cir. 1999). Exhaustion also applies to claims brought against defendants in their official and/or individual capacities. *See e.g., Williams v. Henagan*, 595 F.3d 610, 618 (5th Cir. 2010); *Hines v. Texas*, 76 Fed. Appx. 564 (5th Cir. Sept. 29, 2003) (unpubl.).

Exhaustion is an affirmative defense; thus, the burden is on defendant to establish that

plaintiff failed to exhaust available administrative remedies. *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010) (citation omitted). If the court considers evidence beyond the pleadings to resolve the exhaustion issue, then the nonmoving party is entitled to the protections of Rule 56. *Id*. Nevertheless, the court is authorized to resolve factual disputes concerning exhaustion. *Dillon, supra*. When the court holds an evidentiary hearing on the affirmative defense of exhaustion, defendant must establish failure to exhaust by a preponderance of the evidence. *See Felch v. Transportes Lar-Mex SA*, 92 F.3d 320, 326 (5th Cir. 1996) (citations omitted) (discussing burden of proof in the context of personal jurisdiction).[12]

Under Louisiana law, the Department of Public Safety and Corrections and each sheriff is authorized to adopt an administrative remedy procedure at each of their institutions. La. R.S. 15:1171. The administrative remedy procedure is intended to resolve complaints and grievances that arise while the offender is in the custody of, or under the supervision of the department or sheriff. *Id*. The procedure encompasses complaints and grievances for monetary, injunctive, declaratory, or other relief stemming *inter alia* from conditions of confinement, personal injuries, and medical malpractice. *Id*. These administrative procedures, when promulgated, provide the offender's exclusive remedy – to the extent that federal law permits. *Id*. Finally, "status as an 'offender' is determined as of the time the basis for a complaint or grievance arises. Subsequent events, including posttrial judicial action or release from custody, shall not affect status as an 'offender' . . ." La. R.S. 15:1171(D).

The Fifth Circuit has consistently held that an inmate's ignorance of a prison's grievance procedures does not excuse his noncompliance. *Aguirre v. Dyer*, 233 Fed. Appx. 365 (5th Cir. May 24, 2007) (unpubl.) (citation omitted); *Simkins v. Bridges*, 350 Fed. Appx. 952, 953-954,

---

[12] In *Dillon*, the Fifth Circuit likened exhaustion to personal jurisdiction. *Dillon, supra*.

(5th Cir. Oct. 28, 2009) (unpubl.) (citation omitted); *Plaisance v. Cain*, 374 Fed. Appx. 560, 561, ( April 15, 2010) (unpubl.) (citation omitted). Nonetheless, inmates should have "avenues for discovering the procedural rules governing their grievances." *Dillon, supra* (citations omitted). When an inmate has no means of verifying the administrative grievance process, then misleading information by prison officials may make remedies unavailable. *Id*.

### Findings

I.       **The RPDC Had an Available Administrative Remedy Procedure**

The evidence establishes that the RPDC had an administrative remedy procedure in effect during the relevant period. The procedure may be invoked by sending a letter to the warden, stating that it is a request for grievance remedy. Plaintiff was aware that the RPDC had an administrative remedy procedure. Although the RPDC purported to establish a three-step procedure, it only advised inmates concerning the first step. To learn about the additional steps, inmates had to request additional forms from the control center. There is no evidence that inmates were advised to obtain forms from the control center or to consult with inmate counsel. In fact, the written grievance policy that the RPDC provided to inmates informed them that they could initiate the grievance process simply by writing a letter to the warden and requesting a grievance remedy. Assistant Warden Scott further testified that, before filing suit, an inmate need only generate a grievance form to permit the RPDC to look into his complaint.

Under these circumstances, the undersigned finds that the RPDC had a one-step administrative remedy procedure available during the relevant period, which solely required submission of the grievance to the warden. The written grievance policy provided to the inmates at intake did not allude to any other steps in the process. The written policy not only failed to advise inmates to seek out additional forms, it stated that the process could be invoked by letter.

While there is evidence that information regarding the additional steps of the process could be discovered from other sources, there is no evidence that inmates actually knew about, or should have been aware of, these other sources.

## II.     Garner Did Not Invoke the Grievance Process

Even if Garner composed Hearing Exhibit B on January 23, 2009, as he contends,[13] he testified that he mailed it to the Louisiana Department of Corrections.[14] The RPDC grievance procedure specifies that the grievance must be sent to the warden. Accordingly, the purported grievance submission was ineffective.

Furthermore, the RPDC established by a preponderance of the evidence that Garner did not submit a grievance to the warden stemming from the November 30, 2008, incident while he was housed at the RPDC. Although the court is inclined to believe that Garner attempted to mail Exhibit A to the Louisiana Department of Corrections on or about December 7, 2008, the court is not persuaded that Garner also slipped a copy of this, and/or another grievance under the warden's door.

The court recognizes that Garner only has a sixth grade education, reads poorly, and is not well-acquainted with legal intricacies. However, his explanation that he *temporarily* forgot about these grievance submission attempts as well as his later conversation with the warden, strains credulity – especially in light of his prior representations that he did not file a grievance at the

---

[13] Plaintiff testified that Peter Alfred, an inmate at the Winn Correctional Center helped him complete Exhibit B. Plaintiff, however, was still at Forcht Wade in January 2009. *See* Compl., Envelope.

[14] During the relevant period, Garner was serving a sentence administered by the Louisiana Department of Corrections. Neither side contends that Garner was subject to the Louisiana Department of Corrections' two-step Administrative Remedy Procedure during his confinement at the RPDC.

RPDC because he feared for his life.[15]

To the extent that Hamm's alleged threats prevented Garner from filing a grievance during his confinement at the RPDC, any such impediment was removed upon his transfer to another facility on or about January 20, 2009. However, there is no evidence that Garner submitted a grievance to the RPDC warden after his transfer. Accordingly, plaintiff failed to exhaust his administrative remedies.

### Remedy for Failure to Exhaust

The plain language of the PLRA precludes any further action on plaintiff's claims until he has fully exhausted the administrative remedy procedure. *See Wendell v. Asher*, 162 F.3d 887, 890-91 (5th Cir.1998) (§ 1997e(a) "plainly requires that administrative remedies be exhausted before the filing of a § 1983 suit, rather than while the action is pending ... [t]o hold otherwise would encourage premature filing by potential litigants, thus undermining Congress' purpose in passing the PLRA, which was to provide the federal courts some relief from frivolous prisoner litigation.").

Although dismissal for failure to exhaust administrative remedies is typically without prejudice,[16] the court is authorized to dismiss plaintiff's complaint with prejudice to his right to re-file it in forma pauperis ("IFP"):

> [b]y choosing to file and pursue his suit prior to exhausting administrative remedies as required, [plaintiff] sought relief to which he was not entitled-that is, federal court intervention in prison affairs prior to the prison having had the opportunity to address the complaint within its grievance procedures. We

---

[15] As recently as March 2010, plaintiff reiterated that he did not file a grievance while at the RPDC because he feared for his life. *See* Pl. Reply Memo., pg. 1 [doc. # 35]. Plaintiff's memory lapse improbably extended for one year or longer, before returning at the hearing.

[16] *See e.g., Plaisance v. Cain, supra; Cooper v. Quarterman*, 342 Fed. Appx. 12, 13 (5th Cir. July 14, 2009) (unpubl.).

> therefore affirm the district court's order dismissing [plaintiff]'s action with prejudice for purposes of proceeding IFP.

*Underwood v. Wilson*, 151 F.3d 292, 296 (5th Cir. 1998) (overruled by implication on other grounds by *Jones v. Bock*, 549 U.S. 199, 127 S.Ct. 910, 920-21 (2007)).

The foregoing approach is appropriate here. Accordingly, if plaintiff exhausts his administrative remedies with respect to the claims raised herein, he may present these § 1983 claims again, but may not proceed *in forma pauperis* to do so.[17]

For the above-assigned reasons,

**IT IS RECOMMENDED** that plaintiff's claims against defendant, Lt. Hamm, be **DISMISSED, without prejudice**, on the merits, but **DISMISSED with prejudice** for purposes of proceeding in forma pauperis pursuant to 28 U.S.C. § 1915(d).

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.C.P. Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS**

---

[17] Of course, administrative exhaustion requires "proper" exhaustion, i.e., compliance with an agency's deadlines and other critical procedural rules. *Woodford, supra*. At this point, plaintiff's delay effectively may foreclose his ability to properly exhaust available administrative remedies. *See* Exh. E: "GRIEVANCES MAY BE REJECTED IF . . . [t]here has been a time lapse of thirty or more days between the incident and the initial request."

**REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 4th day of November 2010.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE